Joanna M. Myers
Nevada Bar No. 12048
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Facsimile: (702) 567-1568
Email: jmm@h2law.com

Amanda Milgrom, Esq.
Colorado Bar No. 47871
*Will comply with LR IA 11-2 within 14 days*
MILGROM DASKAM & ELLIS
1550 Larimer St, #503
Denver, Colorado 80202
Telephone: (303) 900-3804
Email: amanda.milgrom@milgromlaw.com

*Attorneys for Miss United States of America LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| MISS UNITED STATES OF AMERICA LLC D/B/A UNITED STATES OF AMERICA PAGEANTS, a Nevada limited liability company,<br><br>Plaintiff,<br>vs.<br><br>MISS AMERICA, INC., a Delaware corporation; MAO IP HOLDING COMPANY, LLC, a Delaware limited liability company.<br><br>Defendants. | Case No. 2:26-CV-03806<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Miss United States of America LLC d/b/a United States of America Pageants ("Plaintiff"), by and through its undersigned counsel, for its Complaint against Defendants Miss America, Inc. ("MAI") and its intellectual property holding company, MAO IP Holding Company, LLC ("MAO"), (collectively, "Defendants"), alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

/ / /



HOWARD & HOWARD ATTORNEYS PLLC

HOWARD & HOWARD ATTORNEYS PLLC

## INTRODUCTION

1. For decades, the national beauty pageant industry has operated under a universal naming convention: The winner of a pageant at the local level is crowned with the name of her city, the winner at the state level with the name of her state, and the national champion with the name of her country.

2. This convention is not the invention of any single pageant system. It is the common language of an entire industry. It is the vocabulary by which contestants, sponsors, families, vendors, and the public understand what a titleholder has achieved and at what level of competition she earned her crown.

3. A sash reading “Miss Nevada” tells everyone in the pageant world exactly what it means: the holder won her state-level competition. It does not tell them who organized that competition, any more than the word “marathon” identifies the organizer of a particular race. It is not a source identifier. In other words, the relevant public, who are pageant goers and current and former contestants, would understand Miss Nevada to refer to a key aspect of beauty pageants, i.e., a Nevada pageant in the unmarried division. This is because all state pageants identify the division (e.g., Miss) and the state (e.g., Nevada) to distinguish between the different types of pageants (e.g., based on different contestant criteria and states).

4. Each pageant then attaches its system name, the moniker, to the standard naming convention to distinguish the pageants from one another, since the term is generic and has no source identifying function. The moniker – the system name – is the source identifying piece of the title. For example, Plaintiff’s complete state pageant name and titleholder in the unmarried division for women living in Nevada is USOA Miss Nevada. The relevant public, pageant goers and contestants, would recognize the title is for pageants for unmarried women held in Nevada, out of the United States of America system as indicated by the USOA moniker. “Miss Nevada” describes the nature and geographic level of the title; it does not identify who provides the services.

5. The generic nature of the state pageant title terminology means the source of the state pageant needs to be distinguished in other ways, particularly when the moniker is omitted, as is the case in numerous situations where the source of the pageant is otherwise identifiable. This happens

by use of design elements in the sash and crown as well. It is the moniker and/or the design elements of the sash and crown that identify the source of the pageant, not the generic term "Miss Nevada."

6. Defendants have attempted to claim exclusive ownership of this shared vocabulary. By filing federal trademark applications and securing federal trademark registrations for "Miss [State]" marks covering the full roster of American states, Defendants have positioned themselves to drive competitors out of the industry's traditional naming convention and are interfering with the ordinary business relationships those competitors need to function.

7. Plaintiff Miss United States of America LLC d/b/a United States of America Pageants, is one of those competitors. Plaintiff operates a national pageant system that, like every other system in the industry, designates its titleholders by combining an honorific with the name of the geographic level at which their title was won.

8. Plaintiff's contestants, women ranging from teenagers to married adults, competing across four distinct categories judged on personal interview, fitness, evening gown presentation, and community impact, earn titles in this same format as recognition of what they have accomplished. Those titles are then emblazoned on the sashes, crowns, and merchandise that Plaintiff awards to its winners.

9. Plaintiff has used MISS [STATE] marks (e.g., MISS NEVADA) since at least as early as January 2018.

10. Defendants cannot legally use the new federal trademark applications or recently acquired trademark registrations retroactively against Plaintiff because Plaintiff used the marks many years before the filing of Defendants' federal applications. Further, the naming system is generic or geographically descriptive, and so cannot be registered on the Principal Register.

11. Instead, Defendants have now weaponized the federal trademark applications and registrations against Plaintiff's vendors who make the merchandise necessary to run Plaintiff's pageants.

12. Defendants' unlawful intimidation tactics are working. As just one example, Defendants, through counsel, sent a cease-and-desist letter to the supplier that manufactured Plaintiff's winner merchandise (the "Vendor"), asserting that the manufacture of sashes and gear



HOWARD & HOWARD ATTORNEYS PLLC

bearing geographic pageant titles infringed Defendants' exclusive rights. Thus, Plaintiff was forced to cease using the Vendor to make its Miss sashes.

13. Defendants should not have been permitted to register these marks in the first place. In fact, MAO conceded the descriptiveness of the marks when it filed its federal applications by asserting that the marks have "acquired distinctiveness."

14. MAO's pending applications and any registrations that have issued should be finally refused and/or cancelled, because the marks are descriptive and/or generic and are being used not to protect a legitimate source identifier but to suppress competition.

15. Plaintiff has been concretely and measurably harmed as a result. Plaintiff asks this Court to order the abandonment of the pending applications and cancel the trademarks in question, declare Plaintiff's use of geographic pageant titles lawful, and hold Defendants accountable for the business harm its conduct has caused.

16. Specifically, this is an action for: (a) a declaratory judgment under 28 U.S.C. §§ 2201–2202 and the Lanham Act that Plaintiff's use of geographic pageant titles does not infringe on Defendants' trademarks and that they are invalid; (b) an order that MAO's registrations for such marks be cancelled pursuant to 15 U.S.C. § 1064 and its pending federal applications be refused or abandoned on the grounds that the Asserted Marks are generic, descriptive, and/or primarily geographically descriptive pursuant to 15 U.S.C. § 1052(e); (c) an award of damages for tortious interference with contractual relations under Nevada law; and (d) an award of damages for intentional interference with prospective economic advantage under Nevada law.

**PARTIES**

17. Plaintiff is a Nevada limited liability company with its principal place of business in the state of Nevada. Plaintiff does business nationwide.

18. Plaintiff owns and operates a pageant system known as United States of America's Miss (the "USOA Miss Pageant"), which operates on the city-to-state-to-national competition structure described in Section A below and awards its titleholders geographic titles in the same format used throughout the pageant industry.

19. Defendant Miss America, Inc. is a Delaware corporation with its headquarters



HOWARD & HOWARD ATTORNEYS PLLC

located at 12490 Sunnydale Drive, Wellington, FL 33414. Miss America, Inc. does business nationwide and does a significant amount of business in Nevada. Miss America, Inc. owns and operates the "Miss America Pageant" which also operates on the city-to-state-to-national competition structure and awards its titleholders geographic titles in the same format used throughout the pageant industry.

20. Defendant MAO IP Holding Company, LLC is a Delaware limited liability company having an address at 12490 Sunnydale Drive, Wellington, FL 33414. MAO IP Holding Company, LLC does business nationwide. MAO IP Holding Company, LLC holds intellectual-property rights associated with Miss America, Inc. and, on information and belief, licenses those rights to affiliates and third parties in Nevada and throughout the United States.

**JURISDICTION AND VENUE**

21. This Court has subject matter jurisdiction over Plaintiff's claims for declaratory judgment, and Plaintiff's request for an order that Defendants' trademark applications be abandoned and cancellation of mark registrations pursuant to 28 U.S.C. §§ 1331 and 1338(a), as those claims arise under the Lanham Act, 15 U.S.C. § 1051 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

22. This Court has supplemental jurisdiction over Plaintiff's claim for tortious interference with contractual relations and prospective economic advantage pursuant to 28 U.S.C. § 1367(a), as those claims arise from the same case or controversy as Plaintiff's federal claims.

23. Venue is proper in this district under 28 U.S.C. § 1391(b)(3), in that Defendants are subject to personal jurisdiction in this district with respect to this action.

24. This Court has personal jurisdiction over Miss America, Inc. ("MAI") and its intellectual property holding company, MAO IP Holding Company, LLC ("MAO") because they engage in substantial and continuous business activities in Nevada, and the acts and omissions giving rise to this lawsuit occurred, in whole or in part, in Nevada. MAI regularly conducts pageants within this District as part of the Miss America Pageant, including state-level pageants conducted annually in Nevada and local and city-level sub-pageants conducted within this state. MAI also recruits and registers Nevada contestants, promotes its pageants to Nevada residents, and derives revenue from



HOWARD & HOWARD ATTORNEYS PLLC

pageant-related activities in Nevada. On information and belief, MAO regularly licenses its intellectual property to affiliates and/or third parties in Nevada, including the Asserted Marks at issue in this case for use in connection with those Nevada activities.

25. Defendants solicit and register contestants located in Nevada; collect entry fees, sponsorship payments, or other revenue from individuals or entities in this District; advertise or promote pageants to residents of this District; and enters into contracts with venues, vendors, or sponsors located in this District in connection with such pageants.

26. This Court further has personal jurisdiction over Defendants Miss America, Inc., and MAO IP Holding Company, LLC because Defendants purposefully directed their conduct at the State of Nevada and expressly aimed their tortious conduct at Plaintiff, a Nevada resident with its principal place of business in Nevada. At all relevant times, Defendants knew Plaintiff was domiciled in Nevada, conducted its business in Nevada, and maintained the contractual relationships at issue from Nevada. Despite that knowledge, Defendants intentionally and improperly interfered with Plaintiff's contractual relationship with its Vendor (as set forth below), by engaging in conduct designed to induce a disruption or termination of that relationship and to interfere with Plaintiff's continued use of the MISS [STATE] designations in its business. Defendants knew and intended that the effects of their conduct would be suffered by Plaintiff in Nevada, including the loss of contractual rights, economic injury, lost revenues, damage to business relationships, and disruption of Plaintiff's Nevada-based business operations.

## <u>FACTUAL ALLEGATIONS</u>

### A. The American National Pageant Industry

27. The national beauty pageant industry is composed of numerous independently owned and operated "pageant systems," each of which conducts its own multi-tiered competition culminating in a national pageant.

28. Although these systems often use superficially similar titles and competition formats, they are distinct, unaffiliated competitions operated by different entities for different purposes, and are judged according to different criteria.

29. Pageant systems are distinguished from one another primarily by the focus of the



HOWARD & HOWARD ATTORNEYS PLLC

competition and the criteria on which contestants are judged. Some systems emphasize talent, interview skills, public speaking, and a contestant's community service platform. Other systems emphasize physical presentation, poise, and appearance, with competition segments resembling swimsuit or evening-wear judging. Because the judging criteria differ from system to system, a title awarded in one system reflects a fundamentally different achievement than a similarly named title awarded in another system.

30. Pageant systems also differ in their eligibility requirements for participation. Systems commonly impose different age ranges for contestants, such that an individual who is eligible to compete in one system may be too young or too old to compete in another.

31. Systems likewise differ as to marital status: Some systems require contestants to be unmarried, while others permit or even require contestants to be married. These and other eligibility criteria vary independently from system to system and are unrelated to any geographic feature of the competition.

32. Additionally, the awards and prizes that a contestant receives for winning the competition differ from pageant to pageant.

33. Despite these substantive differences in judging criteria and eligibility, pageant systems throughout the industry—including systems with no corporate, contractual, or other affiliation with one another—commonly share the same hierarchical competition structure and naming conventions, which are based entirely on geography.

34. Under this common structure, a pageant system's competition begins at the local or municipal level. The winner of a local pageant (e.g., "Miss Las Vegas") advances to compete against the winners of other local pageants within the same state at a state-level pageant (e.g., "Miss Nevada").

35. The winner of each state-level pageant then advances to the system's ultimate national pageant, where she competes against the winners of the other forty-nine states (e.g., the winners designated "Miss Nevada," "Miss Colorado," and so on) for the system's national title.

36. This city-to-state-to-national progression, and the corresponding practice of naming each title after the geographic unit at which it was won, is a generic organizing convention used

HOWARD & HOWARD ATTORNEYS PLLC

throughout the pageant industry. It is not unique to any single pageant system, including the systems operated by Plaintiff and Defendants, and a title such as "Miss Nevada" denotes only that the holder won the competition at the state level, not the identity of the system, sponsor, or organization that conducted the competition.

37. Both Plaintiff's USOA Miss Pageant and Defendants' Miss America Pageant use this common convention in their respective competitions.

38. Consumers, contestants, and industry participants accordingly understand geographic terms used in pageant titles—city names, state names, and the like—to designate the geographic level of competition at which a title was won, not to identify a single, particular source of pageant services.

39. The consumers, viewers, and fans of pageants represent a niche and educated market. They understand that "Miss Hawaii" is a winner of a state-level competition, not that she was a contestant in a specific pageant.

**B. Plaintiff and Others' Use of Geographic Pageant Titles**

40. The designation "Miss [LOCATION]" to identify a pageant winner at the corresponding level of competition has been in widespread, continuous use throughout the national beauty pageant industry for decades. This designation is used not only by Plaintiff, but by numerous other independently operated pageant systems unaffiliated with either Plaintiff or Defendants, to identify their titleholders at the city, state, and national levels of competition within their respective systems.

41. The use of geographic titles in this format is not the exclusive practice of any single pageant system. It is the generic vocabulary of the pageant industry, necessary for contestants, sponsors, vendors, and the public to communicate the level and geographic scope of competition at which a contestant's title was earned. No single pageant operator can claim exclusive rights in this naming convention without effectively appropriating the common language of the entire industry.

42. For example, before forming Plaintiff, Plaintiff's owner, Tanice Smith, used "MISS [STATE]" designations in connection with the Miss United States pageant system.

43. Plaintiff has been using "MISS [STATE]" since at least as early as January 2018.

Plaintiff has used geographic designations in the "Miss [LOCATION]" format, including "Miss [STATE]" and corresponding city- and local-level titles to identify the winners of its pageants and sub-pageants at each level of competition within its system. Plaintiff uses these designations in the same generic and/or descriptive manner in which they are used throughout the industry: to communicate the geographic scope and competitive level at which a contestant's title was won, not as a source identifier for Plaintiff's services. Examples of such uses are shown below:







44. The descriptive and/or generic character of this designation is confirmed by its longstanding use by others throughout the pageant industry. On information and belief, numerous pageant systems operating independently of both Plaintiff and Defendants have used, and continue to use, geographic designations in the "Miss [location]" format to identify their titleholders at corresponding levels of competition.

45. Plaintiff needs and is entitled to continue using geographic designations in the "Miss [Location]" format in connection with the promotion and provision of its pageant competition and entertainment services. These designations are the generic or commonly descriptive terms by which winners of pageant competitions are identified throughout the industry at each geographic level, and no competitor may appropriate them exclusively to the exclusion of all other operators.

### C. Defendants' Registration of Geographic Pageant Titles

46. Defendants own and operate a pageant system known as the Miss America Pageant, which follows the same generic city-to-state-to-national competition structure described above.

47. Like other pageant systems in the industry, including Plaintiff's USOA Miss Pageant, the Miss America Pageant designates the winner of each level of competition using a title consisting of the term "Miss" followed by the name of the geographic unit at which that title was won.

48. Defendant MAI has, through its holding company Defendant MAO, filed trademark applications and obtained one or more federal trademark registrations from the United States Patent and Trademark Office for marks consisting of or comprising phrases such as "Miss Rhode Island" including without limitation the marks listed in the table attached hereto as Exhibit 1 (collectively, the "Asserted Marks"):

49. On information and belief, Defendants use each of the Asserted Marks in the same manner that geographic titles are used throughout the pageant industry generally: to designate the winner of the sub-pageant conducted at the geographic level identified in the mark (e.g., the winner of Defendants' pageant for the State of Nevada is designated "Miss Nevada"), and to designate that sub-pageant's eligibility to advance to the next, broader level of competition within the Miss America Pageant.

50. The Asserted Marks accordingly do not function, and were never capable of functioning, to identify Defendants or the Miss America Pageant as the unique source of the pageant so identified.

51. Instead, consistent with the genericness of the city/state/national naming convention described in Section A above, the Asserted Marks merely describe the geographic level of competition at which a contestant won her title—a designation used, and needed, by every pageant system that employs this same generic competition structure, including the pageant system operated by Plaintiff.

52. Defendants have asserted, and/or threatened to assert, their registrations and pending applications for the Asserted Marks against Plaintiff and/or against contestants, sponsors, vendors, or media affiliated with Plaintiff's pageant system, on the theory that Plaintiff's use of titles such as



HOWARD & HOWARD ATTORNEYS PLLC

HOWARD & HOWARD ATTORNEYS PLLC

"Miss Nevada" infringes Defendants' purported exclusive rights in the term "Miss [LOCATION]."

53. Plaintiff brings this action because the continued existence of the Asserted Marks on the Principal Register threatens Plaintiff's ability to use geographic terms that are, and must remain, generic or merely descriptive designations available to all pageant systems operating under the industry-standard city-to-state-to-national naming convention.

**D. Defendants' Interference Has Harmed Plaintiff**

54. Consistent with the industry-wide naming convention described above, Plaintiff awards its pageant winners sashes and other merchandise and memorabilia bearing titles in the same geographic format used throughout the pageant industry. For example, a sash reading "Miss Washington" is awarded to the winner of Plaintiff's pageant at the corresponding level of competition.

55. Since 2015, Plaintiff obtained merchandise bearing the "Miss [LOCATION]" designations pursuant to a contract with The Sash Company ("Vendor"), under which Vendor manufactured and supplied sashes to Plaintiff bearing the titles awarded to Plaintiff's pageant winners.

56. Plaintiff reasonably anticipated that its relationship with Vendor would continue and that it would renew its arrangement with Vendor at prices consistent with those historically charged.

57. On information and belief, Defendants became aware that Vendor manufactured sashes bearing geographic pageant titles in the format "Miss Nevada" for Plaintiff's pageant winners.

58. Defendants sent a demand letter to Vendor on March 16, 2026, informing it that this merchandise infringed the Asserted Marks and demanding that it cease making sashes bearing the Asserted Marks.

59. Vendor forwarded the letter to Plaintiff that same day. As a direct result of Defendants' interference, Plaintiff was forced to find a different company to produce its "Miss" sashes.

60. Plaintiff's inability to use the Vendor to make Miss [STATE] sashes for Plaintiff has caused, and continues to cause, Plaintiff actual damage, including the loss of Plaintiff's established merchandise supplier for sashes and gear awarded to its pageant winners; the cost and delay of securing a replacement vendor; disruption to Plaintiff's ability to timely produce its pageant; and

HOWARD & HOWARD ATTORNEYS PLLC

resulting harm to Plaintiff's goodwill and standing within the pageant industry.

61. Defendants' continued ownership and assertion of the Asserted Marks accordingly causes Plaintiff direct, concrete, and ongoing commercial harm, and Plaintiff therefore has standing under 15 U.S.C. § 1064 to petition for cancellation of the Asserted Marks.

62. Plaintiff additionally brings a claim against Defendants under Nevada law for tortious interference with contract, arising from Defendants' assertion of the Asserted Marks against Vendor for the express purpose of disrupting Plaintiff's contractual relationship with Vendor, as set forth in Count Two below. This Court has supplemental jurisdiction over that claim pursuant to 28 U.S.C. § 1367(a), as it arises from the same case or controversy as Plaintiff's federal claims for cancellation of the Asserted Marks—namely, Defendants' assertion of rights in geographic terms such as "Miss Utah" against parties dealing with Plaintiff.

**COUNT ONE**

**Cancellation and/or Abandonment of the Federal Registrations and Applications for the Asserted Marks**

63. Plaintiff repeats and realleges paragraphs 1 through 62 hereof, as if fully set forth herein.

64. Plaintiff is damaged by the continued registration of the Asserted Marks as set forth herein.

65. Plaintiff will be further damaged by the registration of the Asserted Marks for which applications are still pending.

66. Defendants' reliance on their federal registrations and pending applications to prevent Plaintiff's vendors from supplying critical merchandise and services to Plaintiff has harmed, and will continue to harm Plaintiff, including by causing Plaintiff to cease using Vendor for its sashes.

67. Plaintiff also has a reasonable and well-founded apprehension that Defendant will attempt to assert the Asserted Marks directly against Plaintiff.

68. As set forth above, the pageant industry universally employs a naming convention in which contestants' titles are formed by combining the term "Miss" with the name of the geographic unit at which the title was won. This naming convention is used, and is necessary, across every

pageant system that employs the standard city-to-state-to-national competition structure.

69. The primary significance of a title such as "Miss Nevada" to the relevant consuming public is not to identify Defendants or one user as the source of pageant services. Rather, the primary significance of that term is to identify the geographic level of competition at which a contestant won her title within whatever pageant system she competed in as well as her age or marital status. This is a generic and/or descriptive designation common to all pageant systems using the industry-standard competition structure.

70. Because the Asserted Marks consist entirely of the generic designation "Miss" combined with a geographic place name used throughout the industry in the same manner, the Asserted Marks are generic as a matter of law and their continued registration is improper.

71. The Asserted Marks should accordingly be cancelled in their entirety pursuant to 15 U.S.C. §§ 1064(3) and 1119 on the ground that they are generic, descriptive, and/or primarily geographically descriptive and have not acquired distinctiveness as source identifiers for Defendants services.

72. As is the case here, a term is generic if the relevant consuming public primarily understands the term to refer to the genus or class of goods or services itself, rather than to the source of those goods or services.

73. In the alternative, to the extent the Asserted Marks are not deemed generic, the Asserted Marks are nevertheless unregistrable and subject to cancellation because they are merely descriptive and/or primarily geographically descriptive of Defendants' pageant services within the meaning of 15 U.S.C. § 1052(e).

74. A mark is merely descriptive under § 1052(e)(1) if it describes an ingredient, quality, characteristic, function, feature, purpose, or use of an applicant's goods or services.

75. The title of "Miss" is a descriptive honorific used to describe unmarried girls or young women. When combined with a geographic descriptor, the term "Miss" identifies and/or describes a pageant contestant or winner that is a young, unmarried girl or woman that is either from the geographic location indicated or that is participating in a pageant located in the geographic area.

76. A mark is primarily geographically descriptive under § 1052(e)(2) when: (i) the



HOWARD & HOWARD ATTORNEYS PLLC

HOWARD & HOWARD ATTORNEYS PLLC

primary significance of the mark to the relevant consuming public is a generally known geographic location; and (ii) a services-place association exists such that consumers would be likely to think that the services originate from or are connected with the identified location.

77. Each of the Asserted Marks consists of the descriptive term "Miss" combined with the name of a well-known geographic location that is familiar to the general public as a geographic designation. The primary significance of each Asserted Mark to the relevant consuming public is accordingly geographic: each mark identifies the location associated with the sub-pageant at which the corresponding title is won.

78. A direct association exists between each Asserted Mark and the named location, as Defendants themselves use each mark to identify a pageant conducted in or associated with that location within Defendants' pageant system, and the relevant consuming public understands each title to denote the geographic level of competition it represents.

79. The Asserted Marks cannot have acquired distinctiveness as source identifiers for Defendants' services because, as set forth above, the relevant consuming public does not understand titles such as "Miss Nevada" to identify Defendants as a source; rather, these terms are understood industry-wide as generic or descriptive designations of a contestant's competitive level and geographic scope, used by all pageant systems operating under the standard competition structure.

80. The registrations for the Asserted Marks should accordingly be cancelled pursuant to 15 U.S.C. §§ 1052(e), 1064, and 1119 on the ground that they are generic, descriptive, and/or primarily geographically descriptive and have not acquired distinctiveness as source identifiers for Defendants services.

81. As a direct and proximate result of Defendants' conduct, Plaintiff suffered, and will continue to suffer, harm and damages.

82. Based on Defendants' conduct, Plaintiff has been required to retain counsel and incur attorneys' fees and costs to protect its rights and interest.

## COUNT TWO

### Tortious Interference with Contractual Relations Under Nevada Law

83. Plaintiff repeats and realleges paragraphs 1 through 83 hereof, as if fully set forth

herein.

84. At all relevant times, Plaintiff maintained a valid and enforceable contract with Vendor pursuant to which Vendor manufactured and supplied sashes and related merchandise bearing Plaintiff's geographic pageant titles for use by Plaintiff's pageant winners.

85. Defendants knew of the contractual relationship between Plaintiff and Vendor, inasmuch as Vendor's manufacture of merchandise bearing titles such as "Miss Nevada" for use by a competing pageant system was apparent from the nature of the goods and Defendants' own assertion of rights directed at that merchandise.

86. Despite that knowledge, Defendants intentionally engaged in wrongful conduct designed to disrupt, impair, and interfere with Plaintiff's contractual relationship. Defendants' actions were undertaken for the purpose of causing Plaintiff economic harm and/or securing an improper benefit for Defendants.

87. Defendants intentionally and without justification interfered with Plaintiff's contract with Vendor by asserting to Vendor that the manufacture and supply of merchandise bearing geographic pageant titles in the format "Miss Nevada" for Plaintiff's winners infringed the Asserted Marks.

88. Defendants' assertion of the Asserted Marks against Vendor was improper and without justification because, as set forth above, the Asserted Marks are generic, descriptive, and/or primarily geographically descriptive terms that are incapable of serving as valid trademarks and to which Defendants hold no legitimate exclusive rights.

89. Defendants knowingly employed wrongful means, including sending allegations of infringement to Plaintiff's vendor with the intent to induce a breach or disruption of Plaintiff's contractual relationship.

90. Defendants acted in conscious disregard of Plaintiff's rights and with knowledge that substantial injury to Plaintiff was a probable consequence of its conduct.

91. Defendants' conduct constituted oppression, fraud, and/or malice, express or implied, within the meaning of NRS 42.005.

92. Defendants knew at the time they made their assertions to Vendor, that the Asserted

HOWARD & HOWARD ATTORNEYS PLLC

Marks consist entirely of generic and/or descriptive industry-standard terminology used throughout the pageant industry and that Defendants had no valid basis to claim exclusive rights in that terminology as against Plaintiff or Plaintiff's vendors.

93. As a direct and proximate result of Defendants' interference, Plaintiff was forced to stop using Vendor for its "Miss" sashes.

94. As a direct and proximate result of Defendants' interference with Plaintiff's contract with Vendor, Plaintiff has suffered actual damages, including but not limited to: the loss of its established merchandise supplier; costs incurred in seeking and securing a replacement vendor; delay and disruption to Plaintiff's ability to timely produce pageant merchandise for its winners; and harm to Plaintiff's reputation and goodwill within the pageant industry.

95. As a result of Defendants' willful and malicious conduct, Plaintiff is entitled to recover punitive and exemplary damages in an amount sufficient to punish Defendants and deter similar misconduct.

**COUNT THREE**

**Intentional Interference with Prospective Economic Advantage Under Nevada Law**

96. Plaintiff repeats and realleges paragraphs 1 through 95 hereof, as if fully set forth herein.

97. At all relevant times, Plaintiff maintained an ongoing business relationship with Vendor pursuant to which Vendor manufactured and supplied sashes and related merchandise to Plaintiff for use in the USOA Miss Pageant.

98. Plaintiff had a reasonable expectation that this business relationship would continue and be renewed, as it had been on a continuing basis prior to the events described herein. Plaintiff's prospective economic advantage consisted of the continuation of this established supplier relationship, including the timely and cost-effective supply of merchandise necessary for the conduct of Plaintiff's USOA Miss Pageant.

99. Defendants knew of the prospective business relationship between Plaintiff and Vendor. Defendants' assertion of the Asserted Marks was directed specifically at Vendor's manufacture of merchandise bearing geographic pageant titles for Plaintiff's winners, demonstrating



HOWARD & HOWARD ATTORNEYS PLLC

that Defendants were aware that Vendor was an ongoing supplier to Plaintiff and that a continuing commercial relationship between Plaintiff and Vendor existed and was expected to continue.

100. Defendants acted with the intent to disrupt Plaintiff's continued supplier relationship with Vendor and with knowledge that such disruption would harm Plaintiff. By asserting the Asserted Marks directly against Vendor rather than pursuing any available legal remedy against Plaintiff directly, Defendant intentionally targeted the commercial relationship between Plaintiff and its vendor, with the foreseeable and intended consequence of inducing Vendor to cease providing Plaintiff with necessary merchandise, including, for example "Miss" sashes.

101. Defendants' conduct was not privileged or justified. Although Defendants' hold federal trademark registrations and/or pending applications for the Asserted Marks, a party's privilege to assert trademark rights against third parties is defeated where the party acts in bad faith or without a reasonable basis for believing its rights are valid and applicable to the conduct at issue.

102. As set forth above, the Asserted Marks consist entirely of generic, descriptive, and/or primarily geographically descriptive terms that have been in widespread use throughout the national beauty pageant industry for decades, by numerous operators unaffiliated with Defendant.

103. Defendants knowingly employed wrongful means, including sending allegations of infringement to Plaintiff's vendor with the intent to induce a breach or disruption of Plaintiff's contractual relationship.

104. Defendants acted in conscious disregard of Plaintiff's rights and with knowledge that substantial injury to Plaintiff was a probable consequence of its conduct.

105. Defendants' conduct constituted oppression, fraud, and/or malice, express or implied, within the meaning of NRS 42.005.

106. Defendants knew at the time they directed their assertions against Vendor, that the designation "Miss [STATE]" is the generic and/or descriptive industry-standard nomenclature for identifying pageant winners at their corresponding level of geographic competition.

107. A party asserting exclusive trademark rights in generic or descriptive wording that it knows it does not exclusively own acts in bad faith and cannot claim a legitimate privilege to interfere with the business relationships of competitors who use the same generic terminology.



HOWARD & HOWARD ATTORNEYS PLLC

108. Moreover, Defendants' assertion was directed not at conduct by Plaintiff that could plausibly infringe a valid mark, but at the supply of merchandise necessary for Plaintiff to conduct its USOA Miss Pageant operations using the same industry-standard geographic naming convention. The targeting of Plaintiff's upstream vendor, rather than any direct assertion against Plaintiff, further evidences that Defendants' purpose was not the good-faith enforcement of legitimate trademark rights but the deliberate disruption of Plaintiff's business relationships and competitive position in the pageant industry.

109. Defendants intentionally engaged in wrongful conduct designed to disrupt, prevent, and interfere with those prospective economic relationships and to deprive Plaintiff of the economic benefits reasonably expected to result therefrom.

110. As a direct and proximate result of Defendants' intentional interference, , Plaintiff was forced to decline to renew its business relationship with Vendor, because Vendor refused to make the sashes it needed as a direct result of Defendants' letter.

111. Plaintiff has suffered actual harm as a result, including the loss of its established merchandise supplier, costs incurred in identifying and securing a replacement vendor, disruption to Plaintiff's ability to timely conduct its USOA Miss Pageant events, and damage to Plaintiff's goodwill and reputation within the pageant industry.

112. As a result of Defendants' willful and malicious conduct, Plaintiff is entitled to recover punitive and exemplary damages in an amount sufficient to punish Defendants and deter similar misconduct.

113. Based on Defendants' conduct, Plaintiff has been required to retain counsel and incur attorneys' fees and costs to protect its rights and interest.

**COUNT FOUR**

**Declaration of Noninfringement Pursuant to 28 U.S.C. §§ 2201–2202**

114. Plaintiff repeats and realleges paragraphs 1 through 113 hereof, as if fully set forth herein.

115. An actual present and justiciable controversy has arisen between Plaintiff and Defendants as to whether Plaintiff's use of the "Miss [LOCATION]" marks in connection with



HOWARD & HOWARD ATTORNEYS PLLC

HOWARD & HOWARD ATTORNEYS PLLC

pageants and associated merchandise infringes any valid trademark rights held by Defendants.

116. An actual present and justiciable controversy has arisen between Plaintiff and Defendants as to whether Defendants own valid and enforceable exclusive rights in the Asserted Marks.

117. Defendants' assertions and conduct have created a real, immediate, and reasonable apprehension that Defendants will seek to enforce their alleged trademark rights against Plaintiff, including through litigation, administrative proceedings, cease-and-desist demands, or other enforcement actions.

118. Plaintiff contends that its use of "Miss [LOCATION]" designations does not infringe any valid trademark rights of Defendants under the Lanham Act, 15 U.S.C. § 1051 et seq., or any other applicable law.

119. Plaintiff further contends that there is no likelihood of confusion between Plaintiff's "Miss [LOCATION]" and the Asserted Marks because, among other reasons, Defendants' marks are generic, descriptive, and/or primarily geographically descriptive, and are commonly used in the industry to identify or describe a contestant and her location.

120. Plaintiff has not engaged in any conduct that constitutes trademark infringement, or any other violation of Defendants' alleged trademark rights.

121. Defendants' attempted and actual interference with Plaintiff's contractual relations and prospective economic advantage related to Plaintiff's lawful use of "Miss [LOCATION]" terms are unjustified.

122. A judicial declaration is necessary and appropriate so that the parties may ascertain their respective rights and obligations and so that Plaintiff may continue its business activities without the uncertainty and harm caused by Defendants' allegations, interference, and threats of enforcement.

123. Plaintiff seeks a declaratory judgment from this Court that: (a) Defendants' Asserted Marks are generic, descriptive, and/or primarily geographically descriptive; and (b) that Plaintiff's continued use of its "Miss [LOCATION]" marks does not infringe upon Defendants' rights in the Asserted Marks.

124. Pursuant to 28 U.S.C. §§ 2201 and 2202, Plaintiff is entitled to a declaration that its use of the wording "Miss [LOCATION]" in connection with Plaintiff's services and ancillary goods/services does not infringe, dilute, violate, or otherwise interfere with any valid trademark rights of Defendants.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendants as follows:

A. For a declaration that the Asserted Marks are generic and/or primarily geographically descriptive and are not entitled to continued registration or protection under the Lanham Act;

B. For an order, pursuant to 15 U.S.C. § 1119, cancelling the registrations for the Asserted Marks in their entireties and directing that the Court's order be certified to the Director of the United States Patent and Trademark Office for appropriate entry upon the records of the USPTO;

C. For an order declaring that Plaintiff's use of "Miss [LOCATION]" wording does not infringe any valid trademark rights asserted by Defendants in the Asserted Marks;

D. For an award of all actual, compensatory, consequential, and special damages proximately caused by Defendants' wrongful conduct, including damages arising from the disruption or loss of Plaintiff's contractual and business relationships and costs reasonably incurred in securing replacement vendors or services, in an amount to be proven at trial;

E. For an award of punitive and exemplary damages to the extent permitted by NRS § 42.005;

F. For a finding that this case is "exceptional" and for an award to Plaintiff of its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a);

G. For an award to Plaintiff of its reasonable attorneys' fees pursuant to NRS § 18.010 and any other applicable law;

H. For an award of Plaintiff's taxable costs pursuant to applicable federal and state law;

I. For an award of pre-judgment and post-judgment interest as permitted by law; and

/ / /

/ / /

/ / /



HOWARD & HOWARD ATTORNEYS PLLC

J. For such other and further relief as the Court deems just and proper, either at law or in equity, either general or special.

DATED: this 13th day of November 2026.

**HOWARD & HOWARD ATTORNEYS PLLC**

By: /s/ Joanna M. Myers
Joanna M. Myers
Nevada Bar No. 12048
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Facsimile: (702) 567-1568
Email: jmm@h2law.com

Amanda Milgrom, Esq.
Colorado Bar No. 47871
*Will comply with LR IA 11-2 within 14 days*
MILGROM DASKAM & ELLIS
1550 Larimer St, #503
Denver, Colorado 80202
Telephone: (303) 900-3804
Email: amanda.milgrom@milgromlaw.com

*Attorneys for Miss United States of America LLC*